**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| REPUBLIC OF HAITI,<br><br><div align="right">*Plaintiff,*</div><br>-*against*-<br><br>HARRIS SLIWOSKI LLP, DAN HARRIS, and JOHN B. MCDONALD,<br><br><div align="right">*Defendants.*</div> | **Index No.:**<br><br>**<u>SUMMONS</u>** |

**TO DEFENDANTS:**

Harris Sliwoski LLP
600 Stewart Street
Suite 1200
Seattle, WA 98101

Dan Harris
600 Stewart Street
Suite 1200
Seattle, WA 98101

John B. McDonald
1015 Third Ave
Seattle, WA 98104

   **PLEASE TAKE NOTE THAT YOU ARE HEREBY SUMMONED** to answer the

Complaint in this action by serving a copy of your answer to Plaintiff's attorney's indicated

below within 20 days after the service of this Summons, exclusive of the date of service, if this

Summons is personally delivered to you within the State of New York, or within 30 days after

service is complete if this Summons is not personally delivered to you within the State of New

York. In case of your failure to appear, judgment will be taken against you by default for the

relief demanded in the complaint.

<div align="center">1</div>

Case 1:24-cv-00157-JLR    Document 1-1    Filed 01/09/24    Page 2 of 28

**PLEASE NOTE THAT** Plaintiff designates New York County as the place of trial pursuant to CPLR § 503(a). The basis for this designation is that a substantial part of the events or omissions complained of occurred in New York County.

Dated: December 1, 2023
        New York, New York

**MADSEN LAW P.C.**

By**:**   ___/s/ Bertrand Madsen_____
        Bertrand Madsen
1115 Broadway, 11th Floor
New York, N.Y. 10010
Tel.:  (212) 346-7744
Email: bmadsen@madsenlawpc.com

- and -

**SCHLAM STONE & DOLAN LLP**

By:   __/s/ Elizabeth Wolstein_____
        Elizabeth Wolstein
        Samuel L. Butt
26 Broadway, 19th Floor
New York NY 10004
Tel.:  (212) 344-5400
Fax:   (212) 344-7677
Email: ewolstein@schlamstone.com
Email: sbutt@schlamstone.com

*Attorneys for Plaintiff Republic of Haiti*

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

REPUBLIC OF HAITI,

*Plaintiff,*

-*against*-

HARRIS SLIWOSKI LLP, DAN HARRIS, and
JOHN B. MCDONALD,

*Defendants.*

Index No.:

**COMPLAINT**

---

Plaintiff the Republic of Haiti (the "Republic"), for its Complaint against Defendants

Harris Sliwoski LLP, formerly Harris Bricken Sliwoski LLP ("Harris Sliwoski"), Dan Harris,

and John McDonald (collectively, "Defendants"), alleges as follows:

**NATURE OF ACTION**

1.       This is a legal malpractice action involving shockingly negligent litigation

conduct by a law firm that claimed, without Plaintiff's knowledge or authority, to represent

Plaintiff then failed to make the most basic argument on Plaintiff's behalf that would have

avoided the subsequent entry of a $31 million judgment against Plaintiff.

2.       Defendants were counsel to non-party Bureau de Monétisation des Programmes

d'Aide au Développement ("BMPAD"), an independent agency of the Haitian government, in

connection with a New York arbitration entitled *Preble-Rish Haiti SA v. Republic of Haiti,*

*Bureau de Monétisation de [sic] Programmes d'Aide au Développement* (the "Arbitration").  In

the Arbitration, claimant Preble-Rish Haiti, S.A. ("Preble-Rish") claimed that BMPAD had

breached three contracts for delivery by Preble-Rish to BMPAD of petroleum products.  The

Case 1:24-cv-00157-JLR   Document 1-1   Filed 01/09/24   Page 4 of 28

three contracts had an arbitration clause.  The sole parties to the contracts were Preble-Rish as

seller, and BMPAD as buyer.  The Republic was not a party to the contracts.

3.      In response to Preble-Rish's arbitration demand to BMPAD, Defendants brought

a petition to stay the arbitration in New York State Supreme Court, New York County, entitled

*Republic of Haiti, Bureau de Monétisation de [sic] Programmes d'Aide au Développement v.*

*Preble-Rish Haiti SA*, Index No. 657237/2020 (the "Stay Proceeding").  Defendants were

counsel to BMPAD, but purported to bring the Stay Proceeding on behalf of <u>both</u> BMPAD and

the Republic—repeatedly claiming to represent the Republic even though the Republic had

neither retained Defendants nor authorized them to make such representations.  The Republic did

not learn until much later of Harris Sliwoski's unauthorized claim to represent the Republic in

the Stay Proceeding.

4.      While the arbitration was pending, Harris Sliwoski admitted in a publicly filed

letter to the U.S. Court of Appeals for the Second Circuit, in connection with an appeal involving

Preble-Rish, that it was never authorized to represent the Republic.  Even though the firm

admitted that it had learned in July 2021 that it was not authorized to represent the Republic, the

firm did not so inform the Justice presiding over the then-pending Stay Proceeding, did not

inform the First Department when it later appealed the lower court's denial of a stay, and

continued to claim to represent the Republic in the Stay Proceeding and at the arbitration hearing

held seven months later in February 2022.

5.      While claiming to represent the Republic, Harris Sliwoski failed to make a

fundamental and dispositive argument on the Republic's behalf – namely, that the Republic was

not a party to the arbitration agreement between Preble-Rish and BMPAD.  Had Harris Sliwoski

<div align="center">2</div>

made this argument—one obvious to any competent lawyer—the court in the Stay Proceeding would have been required to issue a permanent stay of arbitration as against the Republic. Instead, the arbitration proceeded, with Harris Sliwoski continuing to claim it was representing the Republic while failing to argue to the arbitrators that the Republic was not a party to the arbitration agreement.

6.     Harris Sliwoski also failed to make another dispositive argument that would have prevented Preble-Rish from pursuing arbitration against the Republic. In a cross motion to Harris Sliwoski's petition to stay the arbitration, Preble-Rish moved to compel arbitration. Under CPLR 7503(a), however, only a party "aggrieved by the failure of another to arbitrate" has standing to move to compel arbitration. As the case law explains, for a party to be "aggrieved," there must exist either (i) a pending court action by the party resisting arbitration on the subject covered by the arbitration agreement, or (ii) an order to arbitrate by the arbitrators directed against the party resisting arbitration. Neither circumstance existed when Preble-Rish cross moved to compel arbitration. Nor, of course, could Preble-Rish have been "aggrieved" by the Republic's failure to arbitrate when it was not a party to the arbitration agreement. Nonetheless, Harris Sliwoski failed to argue in response to Preble-Rish's cross motion that Preble-Rish was not "aggrieved" as to the Republic and that, accordingly, Preble-Rish lacked standing to compel arbitration against it.

7.     The arbitrators awarded Preble-Rish over $28 million, jointly and severally against BMPAD and the Republic. Preble-Rish brought a petition to confirm the award in the Southern District of New York, entitled *Preble-Rish Haiti, S.A. v. Republic of Haiti, Bureau de Monétisation des Programmes d'Aide au Développement*, No. 22-cv-7503 (PKC) (the "SDNY

3

Action"). The district court confirmed the Award and entered judgment against BMPAD and the Republic, jointly and severally, for $31,076,396.85, including pre-judgment interest.

8.      Defendants' negligence caused the entry of the $31 million judgment against the Republic. Had Defendants made the obvious and dispositive arguments that the Republic was not a party to the arbitration agreement between Preble-Rish and BMPAD, and that Preble-Rish was not "aggrieved" by any failure to arbitrate by the Republic, the state court would have granted the stay petition and denied the motion to compel as to the Republic. There would have been no arbitration, no award, no judicial confirmation, and no $31 million judgment against the Republic.

## PARTIES

9.      Plaintiff the Republic of Haiti is the sovereign nation of Haiti.

10.     Harris Sliwoski LLP, formerly known as Harris Bricken Sliwoski LLP, is a limited liability partnership in the business of practicing law, whose partners, upon information and belief, reside in the United States and abroad. Its principal office is at 600 Stewart Street, Suite 1200, Seattle, Washington. At all relevant times, the firm maintained an office in Manhattan, in New York County. The firm held out its Manhattan office address as 27 E. 21st Street; New York, NY 10010.

11.      Defendant Dan Harris, an individual, is a partner at Harris Sliwoski, and, upon information and belief, resides in Washington State. Harris was one of the architects of his firm's litigation strategy in the Stay Proceeding and the Arbitration, and signed multiple pleadings and papers in the Arbitration.

12.     Defendant John B. McDonald, an individual, is a former partner at Harris Sliwoski, and, upon information and belief, resides in Washington State.  McDonald is a member of the New York bar.  McDonald was another architect of his firm's litigation strategy in the Stay Proceeding and the Arbitration.  He signed all of Harris Sliwoski's court filings in the Stay Proceeding and multiple pleadings and papers in the Arbitration.

## JURISDICTION AND VENUE

13.     The Republic designates New York County as the place of trial.  Venue is proper in New York County pursuant to CPLR § 503(a) because a substantial part of the events or omissions giving rise to the claims occurred here and because none of the parties resides in the state.

14.     Venue is also proper pursuant to CPLR § 509.

15.     This Court has jurisdiction over Defendants pursuant to CPLR §§ 301, 302(a)(1), 302(a)(2), and 302(a)(3) because they have continuous and systematic business in New York State, transact business within New York State and contract to supply services in New York State; committed tortious acts within New York State; and committed a tortious act outside New York State causing injury within the State.

## FACTUAL BACKGROUND

### A.  The Contracts Between Preble-Rish And BMPAD

#### 1.  The Contract Subject Matter And Parties

16.     The underlying dispute in the Arbitration arose under three contracts between Preble-Rish and BMPAD, an independent and autonomous government agency of the Republic. Under the three contracts (a "Contract" or, collectively, the "Contracts"), Preble-Rish agreed to

5

provide BMPAD with deliveries of diesel fuel, jet fuel, and gasoline over a period of six months. The only signatories to the Contracts were Preble-Rish and BMPAD; **the Republic was neither a party nor a signatory** to the Contracts.  The three Contracts, in English translation and in the original French, are attached hereto as Exhibits 1, 1.1, 2, 2.1, 3, and 3.1.

17.     Each Contract, at p.1, specifically notes that BMPAD is an "autonomous organization" and each was signed on behalf of BMPAD only by Fils Aimé Ignace Saint Fleur, the Director General of BMPAD.

18.     BMPDAD's organizing legislation is publicly available and makes clear that BMPAD is an autonomous agency, with an independent legal status and its own financial and administrative autonomy.  This fact among others should have alerted Harris Sliwoski to understand that the fact that it was representing BMPAD did not mean it was representing the Republic.  Public legislation also makes clear that only the Ministry of Economy and Finance is authorized to bind the Republic.

## 2.  **The Arbitration Clause**

19.     Each of the three Contracts included an identical arbitration clause for resolution of disputes between Preble-Rish and BMPAD (the "Arbitration Agreement"), which stated in relevant part:

Article 20.  ARBITRATION AND LEGISLATION

In the event of a dispute between the Buyer [BMPAD] and Seller [Preble-Rish] under this Contract, the dispute shall be submitted by either party to arbitration in New York before three arbitrators.  The Party initiating the arbitration shall provide written notice of its intention to submit the matter to arbitration. . . . The decision of the arbitrators shall be final, conclusive and binding on all Parties.  Judgment upon such award may be entered in any court of competent jurisdiction. . . .

6

(Exhibits 1 at 11, 2 at 12, and 3 at 11).

  **B.**  <u>**Preble-Rish's Arbitration Demand**</u>

  20.  On November 20, 2020, Preble-Rish issued a Notice Demanding Arbitration under the Contracts, (the "Arbitration Demand", attached hereto as Exhibit 4).  The Arbitration Demand was addressed to BMPAD only, and was sent by e-mail to BMPAD's Managing Director, Mr. Fils Aimé Saint Fleur, at his official governmental email addresses.  Upon receiving an arbitration demand, any competent lawyer would have checked to see whether his client was in fact a party to the claimed arbitration agreement.  Even if Defendants wrongly believed they were representing the Republic, by exercising only the most minimal level of care Defendants would have immediately understood that the Republic was not amenable to arbitration.

  21.  The Arbitration Demand did not contain the warning specified in CPLR § 7503(c) "stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made."

  22.  Preble-Rish pursued the arbitration and three arbitrators were appointed.

  23.  On December 4, 2020, Mr. Harris sent a letter to the arbitration panel.  The letter identified Harris Sliwoski (then Harris Bricken) as counsel for the "Government of Haiti" and BMPAD and stated objections to the arbitration.  (Exhibit 5).  The objections failed to note or argue that the Republic was not a party to the Contracts between Preble-Rish and BMPAD.

  24.  Harris Sliwoski's claim that it was representing the Republic was unauthorized and unknown to the Republic.

<center>7</center>

25.     The Republic only learned of Harris Sliwoski's false assertion that it was representing the Republic in or around February 2022.

### C.     Harris Sliwoski's State Court Petition To Stay The Arbitration

26.     Shortly after Mr. Harris' December 4, 2020 letter, on December 22, 2020, Harris Sliwoski filed a petition in New York state court to stay the arbitration pursuant to CPLR § 7503(b) ("Stay Petition", attached hereto as Exhibit 6). The firm also filed an accompanying memorandum of law in support of the requested stay of arbitration (attached hereto as Exhibit 7).

27.     The case was assigned to Justice Andrew Borrok.

#### (1)  Harris Sliwoski Claimed To Represent The Republic Even Though It Was Never Retained Or Authorized To Do So

28.     Harris Sliwoski purported to bring the Stay Petition on behalf of "Petitioners, REPUBLIC OF HAITI ('ROH'), BUREAU DE MONÉTISATION DE [sic] PROGRAMMES D'AIDE AU DÉVELOPPEMENT ('BMPAD')." In the signature block of the Stay Petition, Harris Sliwoski identified the firm as "Attorneys for Republic of Haiti _and_ Bureau de Monétisation de Programmed D'Aide Au Développement." Exh. 6 at 4 (emphasis added). In its signature block on the firm's accompanying memorandum of law, Harris Sliwoski similarly identified itself as "Attorneys for Republic of Haiti _and_ Bureau de Monétisation de Programmes D'Aide Au Développement." Exh. 7, at 8 (emphasis added). As noted, the Republic did not learn until much later of Harris Sliwoski's unauthorized claim to represent the Republic in the Stay Proceeding.

#### (2)  Harris Sliwoski Failed To Argue The Republic Was Not A Party To The Arbitration Agreement

8

29.     CPLR § 7503(b), pursuant to which Harris Sliwoski brought the Stay Petition, allows for a stay of arbitration where, among other grounds, "a valid agreement was not made."

30.     Nonetheless, Harris Sliwoski failed to argue in the Stay Petition or its accompanying memorandum of law that the arbitration should be stayed as to the Republic on the ground that a valid arbitration agreement did not exist between the Republic and Preble-Rish, given that the Republic was not a party to the Arbitration Agreement.

31.     Instead, the Stay Petition argued only that (1) the Arbitration Demand was procedurally deficient because it had not been properly served under New York law or translated into French and Haitian Creole, and that (2) the Arbitration Agreement was invalid under Haitian law.  (Exh. 6 at 3). The memorandum of law was similarly limited to arguing these two legal points as a basis to stay the arbitration. (Exh. 7 at 5-8).

32.     Even worse, Harris Sliwoski falsely represented to the court that the Republic *was a party* to the Contracts when, in fact, it was not.  *See* Exh. 6, at 2, ¶ 2 ("Petitioners Republic of Haiti and Bureau de Monétisation de[s] Programmes D'Aide Au Développement are Haitian entities located in the Republic of Haiti.  *Petitioners have a contract for product with Respondent*.") (emphasis added).

### (3) Harris Sliwoski Failed To Argue That Preble-Rish Lacked Standing To Compel Arbitration Because As To The Republic It Was Not "Aggrieved"

33.     In addition, when Preble-Rish cross-moved to compel arbitration, Harris Sliwoski failed to challenge Preble-Rish's standing to move to compel on the ground that Preble-Rish was not "aggrieved" within the meaning of CPLR § 7503(a).  The court lacks jurisdiction to compel arbitration where the party moving to compel is not "aggrieved."

9

34.  CPLR § 7503(a) states that a "party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration."  The term "aggrieved" has been interpreted to require the existence of either (i) a pending court action by the party resisting arbitration on the subject covered by the arbitration agreement, or (ii) an order to arbitrate by the arbitrators directed against the party resisting arbitration.

35.  At the time Harris Sliwoski brought the Stay Petition, however, the Republic had not initiated a court action on the subject of any arbitration agreement with Preble-Rish—since the Republic had no arbitration agreement with Preble-Rish.  Nor had the Republic ever been ordered to arbitrate against Preble-Rish by any arbitrator or arbitration panel.

36.  Further, it is beyond cavil that where, as here, there is no arbitration agreement, the moving party cannot be "aggrieved" by the refusal to arbitrate.

37.  Thus, Harris Sliwoski failed to raise two dispositive arguments in the Stay Proceeding.  First, the firm failed to argue, as a basis for permanently staying the arbitration as against the Republic, that the Republic was not a party or signatory to the Arbitration Agreement.  In addition, Harris Sliwoski failed to oppose Preble-Rish's motion to compel arbitration, or to move to dismiss that motion, on the ground that Preble-Rish was not "aggrieved" within the meaning of CPLR § 7503(a).  As explained above, since Preble-Rish was not "aggrieved" it lacked standing to bring a motion to compel arbitration against the Republic.  Had either or both of these arguments been made, the state court would have been required to grant the stay petition and deny the motion to compel as to the Republic.

38.  On September 27, 2021, Justice Borrok issued an order denying the Stay Petition and granting Preble-Rish's cross-motion to compel arbitration, concluding that "'petitioners

10

Case 1:24-cv-00157-JLR   Document 1-1   Filed 01/09/24   Page 13 of 28

fail[ed] to establish that the arbitration provisions are illegal under Haitian law.'" ("Stay Petition

Order", Exhibit 8). Moreover, Justice Borrok held, "it is beyond dispute that the parties freely

and unequivocally agreed to arbitrate all their disputes in New York." (*Id.* at 1).

39. On October 27, 2021, Harris Sliwoski appealed the State Court Stay Petition

Order to the First Department. In its Notice of Appeal Harris Sliwoski again identified itself, in

its signature block, as "Attorneys for Republic of Haiti *and* Bureau de Monétisation de[s]

Programmes D'Aide Au Développement." (emphasis added)—even though, as described below,

*by its own admission the firm knew as of July 2021 that it was not authorized to represent the*

*Republic*.

40. In its appeal briefs to the First Department, filed in January and February 2022,

the firm also identified itself in its signature block as "Attorneys for Republic of Haiti *and*

Bureau de Monétisation de[s] Programmes D'Aide Au Développement." (emphasis added). The

First Department affirmed the State Court's Stay Petition Order.

**D.     In The Arbitration, Harris Sliwoski Never Raises The Fact That The
        Republic Is Not A Party To The Arbitration Agreement**

41. During 2021 while the Stay Petition was pending before Justice Borrok, the

arbitration proceeded. Harris Sliwoski made various legal arguments but at no time did the firm

argue to the arbitrators that the Republic was not a party to the arbitration agreement.

42. For example, in a pleading submitted on March 27, 2021, Harris Sliwoski argued,

on behalf of both the Republic and BMPAD, which it collectively defined as "ROH", that the

entities did not recognize the panel's jurisdiction. However, Harris Sliwoski failed to argue that

the Republic was not a party to the Contracts.

11

43.     On April 5, 2021, the arbitration panel determined the Arbitration could proceed despite the pending Stay Proceeding, noting in an email "in its [Stay Proceeding] motion papers, ROH does not dispute that the parties entered into agreements containing an arbitration clause…".  Harris Sliwoski did not contest this ruling.

44.     On April 23, 2021, Harris Sliwoski on behalf of (purportedly) the Republic and BMPAD, submitted Respondents' Initial Statement of Defense, Counterclaims, Reservation of Rights, and Response to Request for Security; the Affidavit of Fils Aimé Ignace Saint-Fleur, Director General of BMPAD, dated April 23. 2021; and related exhibits.  Again, Harris Sliwoski did not raise the argument that the Republic was not party to the Arbitration Agreement.

45.     Nor did Harris Sliwoski do so in its October 26, 2021 Amended Statement of Defense, Counter-Claims, Reservation of Rights and Response to Request for Security, in which Harris Sliwoski again referred to "Respondents" and "Respondents and Counter-Claimants Republic of Haiti ("ROH") and [BMPAD]…"

**E.      The Partial Final Arbitration Award And Preble-Rish's Petition To Confirm**

46.     On August 6, 2021, the arbitration panel issued a "partial final award" in the amount of $23,043,429.79 (the "Partial Final Award"), as "pre-award security" in favor of Preble-Rish. The Partial Award stated that it was issued against "BMPAD," a defined term the arbitrators created to refer to "Respondent, Republic of Haiti, Bureau de Monétisation de[s] Programmes d'Aide au Développement."

47.     On August 9, 2021, Preble-Rish filed a petition in the Southern District of New York to confirm the Partial Final Award (the "Partial Final Award SDNY Action").  The Petition claimed that it was being brought against BMPAD and the Republic.

12

Case 1:24-cv-00157-JLR    Document 1-1    Filed 01/09/24    Page 15 of 28

48.     Harris Sliwoski appeared in opposition to the petition on behalf of BMPAD only and did not purport to represent the Republic.

49.      On February 3, 2022, the Clerk entered an Amended Judgment "as against respondents the Republic of Haiti and the Bureau de Monétisation des Programmes d'Aide au Développement (collectively, 'BMPAD'). Final judgment is entered for [Preble-Rish] as against BMPAD" (the "Partial Final Award Judgment", Exhibit 9).  The Republic had not been served or appeared in the case before entry of the Partial Final Award Judgment.

50.     Later in February 2022, the Republic learned for the first time that Harris Sliwoski had been claiming to represent the Republic in litigation and arbitration, and learned that the Partial Final Award Judgment had been entered against it.

51.     In an effort to unwind the effects of Harris Bricken's negligent failure to at any point argue that the Republic was not a party to the Arbitration Agreement—which as of February 2022 had resulted in entry of a $23 million judgment against it—in February 2022 the Republic retained the undersigned counsel.

52.     On February 22, 2022, the Republic moved under Federal Rules of Civil Procedure 60(b) and 59(e) for relief from the Partial Final Award Judgment or to alter and amend the judgment.  The motion argued, among other things, that the district court lacked subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"), because the Republic was not a party to the Arbitration Agreement.

53.     In an order dated July 20, 2023, the district court denied the Republic's post-judgment motion.

13

## F.  The Arbitration Hearing And The Final Arbitration Award

54.     Meanwhile, on February 7, 2022, an arbitration hearing was held by videoconference.  Harris Sliwoski appeared for BMPAD and claimed to appear for the Republic, even though, as explained below, by July 2021, Harris Sliwoski knew it was not authorized to represent the Republic.

55.     Harris Sliwoski's appearance, like its earlier appearances and submissions, was unauthorized and unknown to the Republic.

56.     At the arbitration hearing Harris Sliwoski again failed to argue that the Republic was not a party to the Contracts and that therefore the arbitrators had no jurisdiction over the Republic.

57.     Having learned of the arbitration and Harris Sliwoski's false and unauthorized claim to be representing the Republic, on February 23, 2022, the Republic, via the undersigned counsel, submitted a letter to the arbitration panel as part of its effort to undo the effects of Harris Sliwoski's negligent failure to challenge arbitrability in the state court or the arbitration, on the ground that the Republic was not a party to the Arbitration Agreement.

58.     The Republic's letter pointed out that the Republic was not a party to the Arbitration Agreement and that the Partial Final Award, accordingly, could not be understood to run against the Republic.  Full briefing then ensued by Preble-Rish and the Republic on the question whether the dispute was arbitrable against the Republic.  The Republic argued that because the Republic was not a party to the Arbitration Agreement the dispute was not arbitrable and further that the arbitrators lacked jurisdiction to decide the arbitrability question, which had to be decided by a court under U.S. Supreme Court and other settled precedent.

14

Case 1:24-cv-00157-JLR    Document 1-1    Filed 01/09/24    Page 17 of 28

59.     On August 23, 2022, the arbitrators issued a Corrected Final Award (the "Final Award").  In the Final Award, the arbitrators awarded Preble-Rish a total of $28,184,756.65 against BMPAD and the Republic, jointly and severally.

60.     The arbitrators took jurisdiction of the arbitrability issue and ruled that the Republic had waived its "non-signatory" defense to arbitrability, based on Harris Sliwoski having failed to raise the argument in the Stay Petition or in the arbitration.

## G.  **The Petition To Confirm, The Republic's Opposition, And The District Court's Decision Confirming The Final Award**

61.     On September 1, 2022, Preble-Rish filed a petition to confirm the Final Award (the "Petition") in the Southern District of New York, captioned *Preble-Rish Haiti SA v. Republic of Haiti, Bureau de Monétisation des Programmes d'Aide au Développement*, Case No. 22-CV-7503 (as noted, the "SDNY Action").

62.     In its continuing effort to undo the effects of Harris Sliwoski's malpractice, the Republic opposed the Petition and also moved to dismiss the Petition for lack of subject matter and personal jurisdiction, and improper service, under the FSIA, or, in the alternative, to vacate the Final Award on the grounds that the arbitrators exceeded their powers in finding the dispute arbitrable against the Republic as a non-signatory to the Arbitration Agreement.

63.     All of the Republic's arguments for dismissal or vacatur were predicated on the fact that the Republic is not a party to the Arbitration Agreement.

64.     As to subject matter jurisdiction, the Republic argued that the arbitration exception to the Republic's sovereign immunity under the FSIA did not apply because the Republic is not a party to the Arbitration Agreement.  Under the arbitration exception to sovereign immunity under the FSIA and Second Circuit case law, in order for the arbitration

15

exception to apply the foreign sovereign must be a party to the arbitration agreement at issue. Since the Republic was not a party to the Arbitration Agreement, no exception to the Republic's sovereign immunity applied.

65.    In an Order dated June 29, 2023, the district court granted Preble-Rish's Petition and denied the Republic's motion to dismiss or vacate the Final Award.  (Exhibit 10).

66.    The court ruled that the Republic's arguments for dismissal were "barred by principles of res judicata," based on the Stay Petition Order.  (*Id.* at 15, 17).

67.    The court reasoned that Harris Sliwoski could have raised the lack of an arbitration agreement between Preble-Rish and the Republic in its Petition to Stay before Justice Borrok, but because it failed to do so, the Republic was "precluded from relitigating issues that were or could have been raised in that proceeding."  (*Id.* at 17).

68.    Accordingly, the court concluded that the Republic "cannot now deny that it had valid arbitration agreement with PRH [Preble-Rish]," and "is not entitled to FSIA immunity." (*Id.*).

69.    The court applied the same preclusion analysis to the Republic's alternative motion to vacate the Award, declining to consider the merits of the Republic's arguments that the arbitrators exceeded their powers by deciding the question of arbitrability against the Republic as a non-party to the Contracts.  (*Id.* at 23).

70.    Rather, because arbitrability had been determined by Justice Borrok, the Republic was precluded "from relitigating issues that were or could have been raised in" the Stay Petition. (*Id.* at 23-24).

<center>16</center>

71.     Finally, the court rejected the Republic's argument of improper service under the FSIA and thus concluded that it had personal jurisdiction over the Republic.  (*Id.* at 18-21).  The court held that the Contracts contained a "special arrangement for service," 28 U.S.C. § 1608(a)(1), allowing for "correspondence between the Parties subject to this Contract" to be delivered by email to the Executive Director of BMPAD.  The court found that the Petition had been emailed to the Executive Director of BMPAD on October 6, 2022.  (*Id.* at 19-20).  The court again rejected the Republic's arguments that it could not be subject to any "special arrangement" for service because it is not a party to the Contracts, on the ground that the argument was precluded by the Stay Petition Order.  (*Id.* at 21).

72.     The district court also declined to consider the Republic's arguments that Harris Sliwoski's lack of actual or apparent authority meant the Republic could not be bound by the Stay Petition Order.  (*Id.* at 17-18).

73.     The court then granted the petition to confirm and denied the Republic's motion to vacate.  (*Id.* at 24).

74.     Final Judgment was entered on July 20, 2023, in the amount of $31,076,396.85, jointly and severally against the Republic and BMPAD.  (Exhibit 11).

75.     Thus, Harris Sliwoski's failure to argue in the Stay Proceeding that the Republic was not a party to the Arbitration Agreement resulted in the district court entering a $31 million judgment against the Republic.

17

**H. Harris Sliwoski Has Admitted It Was Never Authorized To Represent The Republic Yet Continued To Claim It Was Representing The Republic Even After Learning It Had No Authority**

76.     Harris Sliwoski conceded in a letter to the U.S. Court of Appeals for the Second Circuit, dated February 22, 2022, that it never had authority to represent the Republic. (Exhibit 12).  This letter was filed in connection with an appeal that also involved Preble-Rish and Harris Sliwoski's client BMPAD.

77.     Specifically, Mr. McDonald informed the Court that "[i]t came to our attention in or around July 2021 that my firm had not been properly retained to have the authority to represent the Republic in several litigation matters in the United States… Before July 2021 [the] firm had the understanding that we were authorized to represent the Republic, but this was incorrect."  (*Id.*)

78.     In any event, Defendants should have known, before realizing in July 2021, that they had no authority to represent the Republic.  No one among the Republic's representatives ever had any contact with Harris Sliwoski.  In addition, Haitian law, which is public and readily available to any diligent attorney, makes clear that only the Ministry of Economy and Finance may enter into an agreement to bind the Republic.  Defendants made arguments from Haitian law in support of their Stay Petition, but never bothered to consult Haitian law that would have shed light on who their client was, and that it could not be the Republic.

79.     Nonetheless, as shown above, even after July 2021 Harris Sliwoski did not inform Justice Borrok, before whom the Stay Proceeding was pending, that the firm did not in fact represent the Republic and had never been authorized to represent the Republic.  Instead, Defendants knowingly allowed the state court to remain under the false impression that the

18

Republic was a represented party before the court and that it was a party that joined in bringing the Stay Proceeding. Further, Defendants continued to *affirmatively claim* in First Department court filings that it was representing the Republic on the appeal of the State Court Stay Petition Order. Defendants' knowing material omission of fact, and affirmative misrepresentation to the trial court and the First Department directly caused those courts to render adverse decisions against the Republic. Had Defendants informed the courts once they knew, in July 2021, that they were not authorized to represent the Republic in the Stay Proceeding, Defendants' negligent omission of winning, dispositive arguments could not have bound the Republic, either in the Stay Proceeding or the subsequent SDNY litigations, in which the court found Defendants' failure to argue the non-signatory defense dispositive in allowing for liability against the Republic.

### I.    The Facts Establishing Harris Sliwoski's Negligence Are Not In Dispute

80.    The material facts establishing Harris Sliwoski's negligence are not in dispute. There is no dispute that, as the firm informed the Second Circuit, it had never been authorized to represent the Republic.

81.    There is also no dispute that (1) the Republic is not a party to the Arbitration Agreement; (2) Harris Sliwoski failed to raise the argument in the Stay Proceeding that the Republic is not a party to the Arbitration Agreement; (3) Harris Sliwoski never raised the argument before the arbitrators that the Republic is not a party to the Arbitration Agreement; (4) in the Final Award the arbitrators ruled that the Republic was barred from arguing against arbitrability because Harris Sliwoski failed to raise the Republic's non-signatory defense in the arbitration; and (5) the SDNY district court denied the Republic's motion to dismiss the Petition to Confirm the Final Award, and its alternative motion to vacate the Final Award, on the ground

19

that the Republic was barred from arguing that the Republic is not a party or signatory to the Arbitration Agreement because Harris Sliwoski failed to raise that argument in the Stay Proceeding in state court; (6) the SDNY district court entered a final judgment against the Republic in the amount of $31,076,396.85.

82.     Finally, there is no dispute that Harris Bricken failed to argue in opposition to Preble-Rish's motion to compel arbitration that Preble-Rish was not "aggrieved' by any failure of the Republic to arbitrate, and that Preble-Rish lacked standing to compel arbitration against the Republic.

## COUNT I

### (Legal Malpractice – Against All Defendants)

83.     Plaintiff repeats and reiterates the previous paragraphs as though set forth fully in this paragraph.

84.     As set forth above, during their purported representation of the Republic in the Arbitration and Stay Proceeding, Defendants failed to exercise ordinarily reasonable care, skill, diligence, and knowledge commonly possessed or exercised by a member of the legal profession.

85.     By claiming to represent the Republic in the Arbitration and the Stay Proceeding, and purporting to make arguments on its behalf, Defendants are estopped from denying an attorney-client relationship existed.

86.     Defendants committed multiple acts of malpractice.  First, Defendants incorrectly claimed to represent the Republic when they did not, and continued to claim to represent the Republic even after learning in July 2021 that they had no authority to do so. In addition, to the extent Defendants believed they were representing the Republic, Defendants failed to make basic

20

arguments on its behalf. Defendants failed to argue at any point that the Republic was not a party to the Contracts. Since it is axiomatic that a party cannot be required to submit to arbitration any dispute which it has not agreed to submit, the Republic would have not been required to arbitrate, and would not face the over $31 million liability it now faces, had Defendants timely raised this argument. In other words, had Harris Sliwoski timely made the argument in its Stay Petition, and in opposition to Preble-Rish's cross-motion to compel, that the Republic was not a party to the Contracts, the Republic would not have been compelled to arbitrate and the Stay Petition would have been granted. There would have been no arbitration against the Republic.

87. Defendants also failed to oppose Preble-Rish's cross-motion to compel arbitration even though the requirements of CPLR § 7503(a), *i.e.*, that the movant be "aggrieved," were not met and Preble-Rish therefore lacked standing to compel arbitration against the Republic. Again, had Harris Sliwoski made this argument, the Republic would not have been compelled to arbitrate. Thus, there would have been no arbitration against the Republic.

88. Defendants' negligent failure to make these basic arguments for halting the arbitration against the Republic, while claiming to represent the Republic though they were never authorized to do so, caused the Republic to sustain losses of over $31,076,396.85.

89. The Republic sustained such damages as a direct and proximate result of Defendants' malpractice.

90. Defendants are liable to the Republic for malpractice, in the principal amount of at least $31,076,396.85, together with applicable interest thereon and additional damages

consisting of the legal fees the Republic has incurred in attempting to undo the consequences of Defendants' malpractice.

## COUNT II

### (Negligence - Against All Defendants)

91.     Plaintiff repeats and reiterates the previous paragraphs as though set forth fully in this paragraph.

92.     As set forth above, during their purported representation of the Republic in the Arbitration and Stay Proceeding, Defendants failed to exercise ordinarily reasonable skill and knowledge commonly possessed by a member of the legal profession.

93.     By claiming to represent the Republic in the Arbitration and the Stay Proceeding, and purporting to make arguments on its behalf, Harris Sliwoski undertook a duty to the Republic, which duty defendants breached in several ways.

94.     Defendants committed multiple acts of negligence.  First, Defendants incorrectly claimed to represent the Republic when they did not, and continued to claim to represent the Republic even after learning in July 2021 that they had no authority to do so. In addition, to the extent Defendants believed they were representing the Republic, Defendants failed to make basic arguments on its behalf.  Defendants failed to argue at any point that the Republic was not a party to the Contracts.  Since it is axiomatic that a party cannot be required to submit to arbitration any dispute which it has not agreed to submit, the Republic would have not been required to arbitrate, and would not face the over $31 million liability it now faces, had Defendants timely raised this argument.   In other words, had Harris Sliwoski timely made the argument in its Stay Petition, and in opposition to Preble-Rish's cross-motion to compel, that the

22

Republic was not a party to the Contracts, the Republic would not have been compelled to arbitrate and the Stay Petition would have been granted. There would have been no arbitration against the Republic.

95. Defendants also failed to oppose Preble-Rish's cross-motion to compel arbitration even though the requirements of CPLR § 7503(a), *i.e.*, that the movant be "aggrieved," were not met and Preble-Rish therefore lacked standing to compel arbitration against the Republic. Again, had Harris Sliwoski made this argument, the Republic would not have been compelled to arbitrate. Thus, there would have been no arbitration against the Republic.

96. Defendants' negligence caused the Republic to sustain losses of over $31,076,396.85.

97. The Republic sustained such damages as a direct and proximate result of Defendants' negligence.

98. Defendants are liable to the Republic for negligence, in the principal amount of at least $31,076,396.85, together with applicable interest thereon and additional damages consisting of the legal fees the Republic has incurred in attempting to undo the consequences of Defendants' negligence.

## COUNT III

### (Violation of Judiciary Law § 487 – Against All Defendants)

99. Plaintiff repeats and reiterates the previous paragraphs as though set forth fully in this paragraph.

100. Under N.Y. Judiciary Law § 487, an attorney who is guilty of any deceit or collusion, or who consents to any deceit or collusion with the intent to deceive the court or any

party, is liable for treble damages to be recovered in a civil action.  The making of knowingly false statements to a court gives rise to liability under this statute.

101.    As set forth above, Defendants made knowingly false statements to the motion court and the First Department in the course of the Stay Proceeding.  For example, Defendants affirmatively represented that the Preble-Rish "had a contract" with both Petitioners, when in fact Preble-Rish did not have a contract with the Republic, only with BMPAD. No attorney who so much as glanced at the relevant portions of the Contracts upon receiving the Arbitration Demand could have thought the Republic had a contract with Preble-Rish.

102.    In addition, as set forth above, Defendants repeatedly represented to the motion court and the First Department that they were representing the Republic in the Stay Proceeding *even after* they learned in July 2021 that the firm had never been authorized to represent the Republic in litigation or arbitration against Preble-Rish—as Defendants acknowledged in a publicly filed letter to the Second Circuit.  Defendants also continued to claim in the Arbitration that they represented the Republic even after learning in July 2021 that they were never authorized to do so.

103.    Scienter need not be inferred:  scienter exists when a law firm knows it is not authorized to represent a party but continues to falsely claim it represents the party.

104.    As set forth above, Defendants' repeated, knowing false statements caused the Republic to sustain losses of over $31,076,396.85.

105.    As a result, Defendants are liable to Plaintiff for treble damages, or more than $93,000,000.

24

## **RELIEF REQUESTED**

**WHEREFORE,** the Republic demands that judgment be entered in its favor:

A.    On Count I, for malpractice, against Defendants, in an amount to be proven at trial but at a minimum of $31,076,396.85, plus the additional damages attributable to the Republic's efforts to undo the consequences of the malpractice, together with the costs and disbursements and of this action, applicable interest, attorneys' fees, and such other and further relief as to this Court seems just and proper.

B.    On Count II, for negligence, against Defendants, in an amount to be proven at trial but at a minimum of $31,076,396.85, plus the additional damages attributable to the Republic's efforts to undo the consequences of the negligence, together with the costs and disbursements and of this action, applicable interest, attorneys' fees, and such other and further relief as to this Court seems just and proper.

C.    On Count III, for violation of Judiciary Law § 487, against Defendants, in an amount to be proven at trial but at a minimum of $31,076,396.85, plus the additional damages attributable to the Republic's efforts to undo the consequences of the negligence, all of which should be tripled pursuant to section 487, together with the costs and disbursements and of this action, applicable interest, attorneys' fees, and such other and further relief as to this Court seems just and proper.

Dated: New York, New York
        December 1, 2023

25

Case 1:24-cv-00157-JLR    Document 1-1    Filed 01/09/24    Page 28 of 28

**MADSEN LAW P.C.**

By**:**   /s/ Bertrand Madsen
        Bertrand Madsen
1115 Broadway, 11th Floor
New York, N.Y. 10010
Tel.:  (212) 346-7744
Email: bmadsen@madsenlawpc.com

- and -

**SCHLAM STONE & DOLAN LLP**

By:   /s/ Elizabeth Wolstein
        Elizabeth Wolstein
        Samuel L. Butt
26 Broadway, 19th Floor
New York NY 10004
Tel.:   (212) 344-5400
Fax:   (212) 344-7677
Email: ewolstein@schlamstone.com
Email: sbutt@schlamstone.com

*Attorneys for Plaintiff Republic of Haiti*

26